# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| KAREN NOLAN, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-323-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

## ***REPORT AND RECOMMENDED DECISION***[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that she has been disabled since August 1, 1996, by irritable bowel syndrome, fibromyalgia, chronic fatigue, degenerative disk disease, neck pain, and anxiety, suffered from only one non-severe impairment, irritable bowel syndrome, prior to her date last insured for benefits of December 31, 2001. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff's date last insured for SSD benefits was December 31, 2001, Finding 1, Record at 15; that, on or before December 31, 2001, she suffered from irritable bowel syndrome, which was only

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

intermittently symptomatic and did not constitute a severe impairment meeting applicable continuity and duration criteria, although on and after May 24, 2007, the date that she applied for Supplemental Security Income ("SSI") benefits, she had severe impairments of fibromyalgia, chronic fatigue syndrome, mild C5-6 degenerative disk disease, associated with neck pain, upper extremity paresthesias, and cervico-thoracic scapular myofascial pain, and non-severe impairments of an adjustment reaction with anxiety, headache syndrome, and irritable bowel syndrome, Finding 3, *id.*; and that she had been under a disability as defined in the Social Security Act since May 24, 2007, but not on or before December 31, 2001, Finding 11, *id.* at 28.[2] The Decision Review Board did not select the decision for review, *see id.* at 7, making it the final determination of the commissioner, 20 C.F.R. § 405.450(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] In so finding, as the plaintiff's counsel confirmed at oral argument, the administrative law judge rendered a decision fully favorable to the plaintiff on her SSI claim. Entitlement to SSI benefits does not depend on insured status. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999). However, "SSI benefits are not retroactive prior to the month in which the application is filed." *Walker v. Astrue*, No. 2:07CV0053 AGF, 2009 WL 728573, at *2 n.2 (E.D. Mo. Mar. 17, 2009); *see also, e.g.*, 20 C.F.R. § 416.335 ("When you file an [SSI] application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."). Because the plaintiff was found to be disabled as of the time she filed for SSI benefits, she has been afforded all relief available under that program.

With respect to the plaintiff's SSD claim, the administrative law judge reached Step 2 of the sequential process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff asserts that the administrative law judge committed reversible error in (i) making a seriously flawed Step 2 finding, (ii) failing to evaluate her credibility properly, and (iii) violating the requirements of Social Security Ruling 83-20 ("SSR 83-20"), pertaining to determination of the onset date of a claimant's disability. *See* Plaintiff's Itemized Statement of Error ("Statement of Errors") (Docket No. 11) at 2-13. On the basis of the latter asserted flaw, she seeks reversal and remand with instructions to award benefits as of December 31, 2001. *See id*. at 13. I find no reversible error and, accordingly, recommend that the decision be affirmed.

### A. Step 2 Finding

A claimant bears the initial burden of adducing evidence that during the relevant time period he or she suffered from a medically determinable impairment. *See, e.g.,* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."). A claimed condition for which no such evidence is produced rightfully is ignored. *See, e.g.,* Social Security Ruling 96-7p

("SSR 96-7p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 133 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").

"[S]ymptoms, such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s)." Social Security Ruling 96-4p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009) ("SSR 96-4p"), at 120 n.2; *see also* 20 C.F.R. § 404.1528(a)-(b). "However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" *Id*.

The administrative law judge carefully considered each of the plaintiff's claimed conditions and supportably concluded that she had not proven that she had medically determinable impairments, apart from irritable bowel syndrome, prior to December 31, 2001.

Fibromyalgia and Chronic Fatigue Syndrome: The administrative law judge found that the record revealed neither a diagnosis of, nor complaints consistent with, fibromyalgia or chronic fatigue syndrome prior to December 31, 2001. *See* Record at 16-17. That conclusion is supported by substantial evidence. The plaintiff was diagnosed in 2004 by rheumatologist Deirdre A. Gramas, M.D., M.P.H., with fibromyalgia and chronic fatigue syndrome. *See id*. at 323, 331. When she first consulted Dr. Gramas on March 4, 2004, she described "ongoing musculoskeletal pain, lymphadenopathy, right lower back discomfort, as well as weight loss and severe exhaustion and fatigue for 6-8 months." *Id*. at 334. There are other indications of record

that the development of these conditions postdated her date last insured. *See, e.g., id.* at 425 (progress note of Debora Czuchra, RN, NP, dated October 31, 2005, stating that "chronic fatigue and low back pain is really bothering [the plaintiff] for the past year").

While the plaintiff did complain in July and August 1998 of the onset, in July 1998, of an abdominal rash and hip and knee pain, attributed at the time to probable Lyme disease following a suspected tick bite, *see id.* at 477, 481, and fatigue, attributed to care of a seven-month-old infant and a toddler, *see id.* at 477, progress notes for the period prior to December 31, 2001, do not reflect ongoing complaints. She was noted in a progress note of February 20, 2002, to have been feeling very well, apart from a benign lump under her arm, and to have denied fatigue. *See id.* at 460.

Lyme Disease: The administrative law judge found that the record revealed no definitive diagnosis of Lyme disease. *See id.* at 17. That conclusion is supported by substantial evidence. Antibody screens in 2005, 2006, and 2007 were negative for the disease. *See id.* at 386, 398, 429. An infectious disease consultation in 2007 also ruled it out. *See id.* at 619-20. While an IGeneX, or Western blot, test performed in December 2008 was positive, or partially so, *see id.* at 84, 590, medical expert Peter B. Webber, M.D., testified at the plaintiff's hearing that even in view of that finding, he could not support a diagnosis of Lyme disease, *see id.* at 84.

Vertebrogenic Disorder: The administrative law judge found that the record did not establish that the plaintiff suffered from a vertebrogenic disorder on or prior to her date last insured. *See id.* at 19-20. That conclusion is supported by substantial evidence. On October 18, 1999, the plaintiff complained that she had developed pain in her left neck and shoulder three days earlier after having to lift her son a great deal. *See id.* at 474. However, she was assessed only with muscle spasm. *See id.* On May 30, 2000, she expressed concern that she had noticed

an apparent two-inch space in the vertebrae in her mid-back, although she "has had no back pain, decreased range of motion, or any other problems with it." *Id*. at 471. An x-ray of her thoracic spine showed "minimal kyphoscoliosis with no intrinsic osseous abnormalities and otherwise negative findings." *Id*. at 472. On November 17, 2000, the plaintiff consulted an orthopedist, Robert S. Furman, M.D., for a second opinion on her back. *See id*. at 288. The plaintiff complained of pain in her lower, rather than mid-back, which prompted Dr. Furman to obtain lumbar (lower) back x-rays. *See id*. Those x-rays revealed no abnormality of the lumbar spine. *See id*. Dr. Furman concluded that the plaintiff's kyphoscoliosis was not clinically significant and that she suffered from no lumbar spine disease. *See id*. He attributed complaints of lower back pain to "a morning stiffness." *Id*. At the plaintiff's hearing, Dr. Webber testified that there were no definitive positive radiological studies predating October 22, 2008. *See id*. at 64.

Migraine Headaches: The administrative law judge found that, although the plaintiff complained that she was having severe migraine headaches since 1996, her medical records, with one exception, were devoid of complaints regarding such headaches prior to her date last insured, and she did not seek or receive treatment for migraine headaches again until April 2007. *See id*. at 20. He concluded that, therefore, the record contained no evidence that the plaintiff had a severe headache condition meeting applicable continuity and durational criteria prior to her date last insured. *See id*. at 22; *see also, e.g.*, 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). That conclusion is supported by substantial evidence. On one occasion prior to her date last insured, January 5, 2000, the plaintiff complained of a two-week history of migraine headaches. *See id*. at 524.[3] She raised the issue of migraine headaches again in April

---

[3] The administrative law judge describes the plaintiff as having complained in December 1999 of migraine
*(continued on next page)*

2007. *See id*. at 399. On December 5, 2007, she told a neurologist, Robert W. Stein, M.D., that, after an initial 1996 episode of severe headache, "over the next 5 years she only had sporadic headaches that were not terribly troublesome[,]" that, in 2001, she began to suffer headaches more regularly, occurring once a month or less frequently, and that, in the prior six months, the headaches had changed for the worse in duration, frequency, and nature. *Id*. at 495. This buttresses the conclusion that the plaintiff did not suffer headache syndrome for a 12-month period prior to her date last insured.

Irritable Bowel Syndrome: The administrative law judge found that, while the plaintiff did have a number of episodes of recurrent irritable bowel syndrome, the evidence did not establish that it was a severe impairment meeting the commissioner's continuity and duration requirements, given that it had been symptomatic on no more than a few occasions since her alleged date of onset of disability. *See id*. at 23. He arguably erred in finding this condition not to have met duration and continuity requirements: while its symptoms were intermittent, the impairment itself persisted for more than a year prior to the plaintiff's date last insured. *See* Record at 489 (complaint on April 18, 1997, of significant diarrhea, one to two times daily, for the prior one to two months), 477 (notation on August 4, 1998, that the plaintiff had experienced diarrhea, improved since she stopped taking an antibiotic to treat suspected Lyme disease), 466 (complaint on February 26, 2001, of a four-week or longer history of loose stools), 461 (complaint on October 9, 2001, of diarrhea since the birth of her child three weeks earlier); *see also, e.g., Greene v. Barnhart*, No. 03-36-B-W, 2003 WL 22961199, at *4 (D. Me. Dec. 15, 2003) (rec. dec., *aff'd* Jan. 9, 2004).

---

headaches of two-week duration. *See id*. at 22. This evidently is a reference to her January 5, 2000, complaint. *See id*. at 524. In any event, any discrepancy is immaterial. Like the administrative law judge, I find only one mention of migraines in the medical records predating the plaintiff's date last insured.

Nonetheless, the administrative law judge supportably deemed the condition non-severe prior to the plaintiff's date last insured on the basis that the evidence established that it was symptomatic on only a few occasions from the alleged date of onset of disability.

Mental Impairments: The administrative law judge determined that there was virtually no objective medical evidence that the plaintiff suffered from any mental impairment on or before her date last insured and that she did not appear to have complained of any significant mental impairment on or before that date. *See id*. at 25. That conclusion is supported by substantial evidence. The record reflects that on only one occasion prior to her date last insured did the plaintiff raise mental health concerns. She was noted on July 14, 1998, to have "been under a lot of stress because of recent moves and having two young children" and to have indicated that she and her husband would like to meet with a counselor. *Id*. at 482. A counseling referral was given. *See id*. There is no further report of mental health treatment or the raising of mental health concerns prior to the plaintiff's date last insured. On January 5, 2000, she was noted to have good mental health and to have been sleeping well. *See id*. at 524.

Tellingly, the plaintiff does not challenge the administrative law judge's specific conclusions as to each of her claimed conditions. Instead, she asserts that his Step 2 finding clashes with (i) a residual functional capacity assessment of a treating physician, Susan M. Hage, D.O., reflecting significant impairment since December 31, 2001, (ii) a residual functional capacity assessment of a consulting examiner, John A. Boothby, M.D., reflecting significant impairment since October 1, 2001, and (iii) Dr. Webber's testimony that the plaintiff was "essentially non functional as far as the work schedule of an eight-hour day and a five day a week long-standing program[,]" and her disability "certainly goes back to the point that she had this bite, whatever it was, and she's been getting into worse situations since that bite." Statement

of Errors at 3-5; *see also* Record at 579-82 (Hage assessment), 600-03 (Boothby assessment), 90 (Webber testimony).

As the plaintiff's counsel acknowledged at oral argument, in a "stand-alone" Step 2 case, a supportable determination of lack of medically determinable impairments would end the analysis, obviating the need to consider a claimant's residual functional capacity and, in that context, her credibility. However, he noted, this case is different because the plaintiff's acknowledged current disability triggered the obligation under SSR 83-20 to determine whether her disability commenced prior to her date last insured. Counsel for the commissioner essentially agreed, describing credibility as the determinative issue in this case. I move to the question of whether, in considering disability onset date, as informed by his supportable Step 2 finding, the administrative law judge supportably rejected the opinions of Drs. Webber, Hage, and Boothby as well as the plaintiff's own allegation that she had been disabled since 1998.

### B. SSR 83-20

SSR 83-20 provides, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49. Because the administrative law judge determined that the plaintiff had been disabled since May 24, 2007, the date that she applied for SSI benefits, *see* Finding 11, Record at 28, and she claimed to have been disabled since 1996, prior to her date last insured for SSD benefits, *see* Findings 1-2, *id.*, he was obliged to determine the onset date of her disability pursuant to SSR 83-20.

9

In cases, such as this one, involving an onset of disability of "nontraumatic" origin, SSR 83-20 contemplates consideration of the claimant's allegations, work history, and the medical and other evidence concerning impairment severity in determining onset date. *See* SSR 83-20 at 50-51. It provides:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

*Id*. at 51.

The ruling also notes that "[i]n some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." *Id*. "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case." *Id*. "This judgment, however, must have a legitimate medical basis." *Id*. "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id*.

While SSR 83-20 does not mandate that a medical advisor be called, or additional evidence be sought, in every instance, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006).

The plaintiff contends that the administrative law judge correctly sought the opinion of a medical advisor, Dr. Webber, as required by SSR 83-20, but then erroneously rejected his

opinion as to onset date of disability, even though it was consistent with those of Drs. Hage and Boothby. *See* Statement of Errors at 13. She contends that, in these circumstances, the record is sufficiently clear as to date of onset of disability that remand with instructions to award benefits is appropriate. *See id.*

### 1. Dr. Webber and the Plaintiff's Credibility

In neither her statement of errors nor through counsel at oral argument has the plaintiff pointed to authority for the proposition that, for purposes of an SSR 83-20 onset determination, an administrative law judge is obliged to *accept* the opinion of a medical expert called to assist in that analysis. To the contrary, the regulations are clear that the ultimate determination of disability is reserved to the commissioner. *See, e.g.*, 20 C.F.R. § 404.1527(e)(1). In the circumstances presented, the administrative law judge supportably rejected Dr. Webber's onset opinion.

At the plaintiff's hearing, Dr. Webber expressed the opinion that she had not been "functional" since she was bitten by an insect in 1998. *See* Record at 90. This prompted the administrative law judge to inquire, "[W]hen you say the claimant is essentially non functional since at least her insect bit[e] I'm assuming that you're finding her testimony credible regarding her complaints of pain?" *Id.* at 91-92. Dr. Webber replied: "I believe so." *Id.* at 92.

In so testifying, Dr. Webber effectively acknowledged that he based his onset date of disability on his acceptance of the credibility of the plaintiff's reported pain-based functional limitations well before her date last insured. Tellingly, as counsel for the commissioner pointed out at oral argument, Dr. Webber himself rejected the purported diagnosis of Lyme disease made in 1998. *See id.* at 84.

The administrative law judge supportably rejected Dr. Webber's onset opinion on the

ground that the 1998 onset date clashed with clear evidence of record that the plaintiff was functional in raising her children, maintaining appropriate hygiene, exercising, maintaining a household, and in numerous other activities of daily living prior to 2007. *See id*. at 27, 288 (plaintiff noted on December 6, 2000, to be working out twice a week), 460 (plaintiff noted on February 20, 2002, to have been feeling very well), 295 (plaintiff advised on April 19, 2002, with respect to slow healing of wound on foot following laser surgery for plantar wart, that "no wound therapy will be successful if she continues to weight-bear on the wound surface as she has been doing, running after her three small children"), 360 (plaintiff told consulting examiner on August 14, 2007, that she ran household, did laundry, prepared three full meals a day, drove her children to their activities, driving as much as 100 miles a day, and walked in neighborhood twice a week, although she no longer could afford a Curves membership).

Further, as counsel for the commissioner persuasively contended at oral argument, the administrative law judge offered ample reasons, easily meeting the applicable deferential standard of review, for rejecting the plaintiff's own claim that she had been markedly functionally limited since 1998. *See* Record at 54; *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."). These included his observations that the 1998 onset date was inconsistent with (i) the plaintiff's contemporaneous activities of daily living, (ii) her own statements to treating providers indicating a later date of onset, and (iii) contemporaneous medical records revealing little or no treatment prior to her date last insured for her alleged disabling conditions. *See* Record at 26.

As noted above, each of these observations has substantial record support.[4]

The administrative law judge also noted that he gave "[g]reat evidentiary weight . . . to the December 22, 2006 opinion of the Maine District Court Judge (Exhibit 9D), who concluded that the claimant made unfounded and exaggerated accusations concerning her former husband's conduct." *Id.* The plaintiff protests that the administrative law judge misconstrued this opinion, in which the Maine District Court Judge did not find or even imply that she had testified falsely but rather acknowledged that her "misguided and dangerous beliefs appear to be sincere" and that she was "motivated out of love and affection for [her] children." Statement of Errors at 9; Record at 207. Nonetheless, as counsel for the commissioner argued, one need not be an intentional liar to lack credibility, and the Maine District Court Judge did in fact find that the plaintiff's allegations regarding her ex-husband were false, even if sincere. The plaintiff offers no authority for the proposition that it was improper to take this evidence, like other evidence of record, into account in assessing her credibility overall.[5]

The administrative law judge's credibility finding, as well as his related rejection of the Webber onset date opinion, are supported by substantial evidence.[6]

---

[4] The plaintiff faults the administrative law judge for improperly translating her ability to do household chores and to care for her children into an ability to engage in full-time employment. *See* Statement of Errors at 6-7. The administrative law judge did not do so. Rather, he permissibly considered whether her activities of daily living reflected greater capacity than that alleged at the relevant time, reflecting negatively on her credibility. *See, e.g.*, SSR 96-7p at 135 (listing "individual's daily activities" as among factors an adjudicator must consider when assessing credibility of individual's statements).

[5] In the context of her credibility discussion, the plaintiff asserts that the administrative law judge committed "a critical error" in failing to assess the effects of stress on her ability to perform basic work-related activities, as required by Social Security Ruling 85-15 ("SSR 85-15"). *See* Statement of Errors at 8; *see also* SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 349 (noting that the mentally impaired "may have difficulty meeting the requirements of even so-called 'low-stress' jobs[,]" and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC [residual functional capacity] assessment"). She posits that it is uncontroverted that stress exacerbates her irritable bowel syndrome. *See* Statement of Errors at 8. The problem for the plaintiff is that SSR 85-15 applies to the "mentally impaired[.]" SSR 85-15 at 349. The administrative law judge supportably found that the plaintiff had not shown that she suffered from a medically determinable mental impairment prior to her date last insured.

[6] The plaintiff contends that the administrative law judge based his finding of non-disability prior to her date last insured on a flawed credibility finding rather than on the medical evidence. *See* Statement of Errors at 9-10. As
*(continued on next page)*

## 2. Drs. Hage and Boothby

I likewise discern no error in the administrative law judge's rejection of Drs. Hage's and Boothby's opinions. Their opinions, bearing on the plaintiff's residual functional capacity and her onset date of disability, touched upon matters reserved to the commissioner, with respect to which even opinions of treating sources are accorded no "special significance." 20 C.F.R. § 404.1527(e)(1)-(3). An administrative law judge is free to decline to adopt a treating source opinion on an issue reserved to the commissioner so long as he or she supplies "good reasons" for doing so. *See id.* § 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ( "SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to residual functional capacity but "must explain why the opinion was not adopted").

The administrative law judge met these standards with respect to Dr. Hage, a treating source, as well as Dr. Boothby, a one-time consultant, finding that:

1. Dr. Boothby's assessment of the plaintiff's condition "from October 1, 2001" appeared to be "almost pure speculation[,]" given that Dr. Boothby saw her only once, in March 2009, and that he specifically noted, "I do not have confirmation of most of these diagnoses looking through the chart in detail." Record at 26-27, 596, 598.

---

discussed, the credibility finding is not flawed. In addition, the administrative law judge thoroughly reviewed the medical evidence in assessing whether the plaintiff had shown the existence of medically determinable impairments.

2. Dr. Hage's opinion appeared to be based on the plaintiff's self-assessment of her limitations. *See id.* at 27; 580 (supplying, as basis for limitations on lifting/carrying, standing/walking, sitting, and pushing/pulling, "pt [patient] reports of pain + limited activity tolerance even for simple household chores), 584 (stating that Dr. Hage intended to complete residual functional capacity assessment "with patient's input").[7]

As counsel for the commissioner suggested, this case is distinguishable from *Godsey v. Astrue*, Civil No. 08-410-P-S, 2009 WL 1873528 (D. Me. June 29, 2009) (rec. dec., *aff'd* July 23, 2009), in which an administrative law judge, in contravention of SSR 83-20, discredited a claimant's allegation that he had experienced disabling symptoms 10 months prior to being found disabled for purposes of SSI benefits, *see Godsey*, 2009 WL 1873528 at *2, solely on the basis of lack of contemporaneous medical evidence, *see id.* at *5 ("[T]hat analytical approach flies in the face of SSR 83-20, which contemplates that once a claimant is found disabled, the date of onset of disability must be established and may be inferred, even in the absence of contemporaneous medical evidence.").

The claimant in *Godsey* had explained that he had not sought medical attention prior to his date last insured because he was afraid of what he might be told, had neither insurance nor money, and did not want to impose on others. *See id.* at *4. In this case, as counsel for the commissioner pointed out, there were a number of contemporaneous medical records indicating that the plaintiff sought treatment prior to her date last insured for a variety of complaints, including loose stools and tendonitis, *see* Record at 466, 489, pharyngitis, *see id.* at 486, neck and shoulder pain, *see id.* at 474, ear pain, *see id.* at 473, corns, *see id.* at 469, and a respiratory infection, *see id.* at 463, and had gone so far as to seek a consultation regarding a spinal

---

[7] In addition, Dr. Hage did not begin to treat the plaintiff until May 23, 2008, *see* Record at 562, well past her date last insured.

15

abnormality that had not caused pain or dysfunction, *see id*. at 288, 471.  As counsel for the commissioner argued, the administrative law judge reasonably inferred that, had the plaintiff at that time been suffering from disabling symptomatology, she would have sought treatment for it. *See id*. at 26.

In view of (i) the lack of indication in contemporaneous medical records that the plaintiff then suffered disabling symptomatology, (ii) the indication in subsequent medical records that she became disabled after her date last insured, (iii) the administrative law judge's proper negative credibility assessment, and (iv) his supportable rejection of the onset date opinions of Drs. Webber, Hage, and Boothby, the administrative law judge properly, in accordance with SSR 83-20, determined that the plaintiff's onset date of disability postdated her date last insured.  *See* SSR 83-20 at 50 ("[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.").[8]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

---

[8] It is not material whether the administrative law judge correctly determined that May 24, 2007, *versus* some date in between December 31, 2001, and May 24, 2007, was the onset date of the plaintiff's disability.  As noted above, the plaintiff has been afforded all relief available to her under SSI.  The only remaining question is whether she qualifies for SSD by virtue of proving a date of onset of disability on or before December 31, 2001.

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 24th day of June, 2010.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
